**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RICHARD VILLANUEVA, | : | |
| Petitioner, | : | CIVIL ACTION NO. |
| | : | 16-CV-293 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | JUNE 10, 2016 |
| Respondent. | : | |

**RULING RE:  PETITIONER'S SUCCESSIVE MOTION TO**
**VACATE, SET ASIDE, OR CORRECT SENTENCE (DOC. NO. 1)**

**I.    INTRODUCTION**

Richard Villanueva ("Villanueva") moves to vacate, set aside, or correct his
sentence under section 2255 of title 28 of the United States Code ("section 2255").
Motion to Vacate, Set Aside or Correct Sentence ("Motion") (Doc. No. 1).  Villanueva
claims that his sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C.
§ 924(e), is invalid in light of Johnson v. United States, 135 S. Ct. 2552 (2015).  Motion
at 1.  The United States opposes the Motion on the ground that Villanueva's prior
convictions qualify as ACCA predicates notwithstanding Johnson.  Gov't's Resp. to
Villanueva's Pet. ("Opposition") (Doc. No. 5) at 1.

For the reasons set forth below, the Motion is **GRANTED**, the sentence
**VACATED**, and the case will be set down for resentencing.

**II.    BACKGROUND**

On June 3, 1999, a Bridgeport grand jury returned an indictment charging
Villanueva with one count of being a felon in possession of a firearm, in violation of
section 924(g)(1) of title 18 of the United States Code.  Indictment (Crim. Case No. 99-
CR-112 (Doc. No. 1)).  The Indictment further alleged four prior felony convictions: the

first for the sale of narcotics on January 27, 1988, in violation of section 21a-277(a) of the Connecticut General Statutes; the second for possession of narcotics with intent to sell on May 29, 1990, in violation of section 21a-279(a) of the Connecticut General Statutes;[1] the third for assault in the first degree on May 29, 1990, in violation of section 53a-59(a); and the fourth for assault on an officer on November 10, 1992, in violation of section 53a-167(c).  Id.  On November 10, 1999, a jury convicted Villanueva of being a felon in possession of a firearm.

On February 1, 2000, this court held a sentencing hearing.  At that hearing, the court concluded that the two prior drug convictions qualified as "serious drug offenses" within the meaning of ACCA, see Sent'g Trans. ("Transcript") (Crim. Case No. 99-CR-112 (Doc. No. 57)) 12:2-13:11, and, without discussion, concluded that at least one of the two assault convictions constituted "violent felonies" within the meaning of ACCA. The parties stipulated to the fact that Villanueva was ACCA eligible, and the court did not state on the record under which provision of ACCA the assaults constituted "violent felonies."  See generally id.

On October 2, 2000, the Second Circuit affirmed Villanueva's conviction and sentence.  Mandate (Crim. Case No. 99-CR-112 (Doc. No. 60)).  On December 31, 2000, Villanueva's time to file for a petition for a writ of certiorari expired, Sup. Ct. R. 13, and his conviction thus became final for purposes of collateral review under section

---

[1] The Indictment inaccurately charged Villanueva with a prior conviction under section 21a-279(a) of the Connecticut General Statutes, which would not have qualified as a "serious drug offense" under ACCA.  However, as the court discussed at Villanueva's sentencing, and as Villanueva's counsel conceded, Sent'g Trans. (Crim. Case No. 99-CR-112 (Doc. No. 57)), at 5:22, Villanueva was in fact convicted under section 21a-277(a), id. at 5:4, which did qualify.  See id. at 12:2-13:11.

2255 of title 28 of the United States Code.  Clay v. United States, 537 U.S. 522, 525 (2003).

On July 29, 2003, this court denied Villanueva's first Motion under section 2255. Ruling (Crim. Case No. 99-CR-112 (Doc. No. 80)).  The Second Circuit affirmed the denial of his first Motion on July 19, 2005.  Mandate (Crim. Case No. 99-CR-112 (Doc. No. 101)).

On February 16, 2016, the Second Circuit granted Villanueva's Motion for Leave to File a Successive Section 2255 Motion.  See Mandate (Crim. Case No. 99-CR-112 (Doc. No. 119)).  In its Mandate, the Circuit directed this court "to address, as a preliminary inquiry under [28 U.S.C.] § 2244(b)(4), whether the Supreme Court's decision in Johnson[ v. United States, 135 S. Ct. 2551 (2015)] announced a new rule of constitutional law made retroactive to cases on collateral review, and thus permits [Villanueva]'s new § 2255 claim to proceed."  Id. at 2.  The court further directed this court to "determine whether the assault convictions remain proper ACCA predicates after Johnson, and what evidence may be considered in making that determination."  Id.

Villanueva filed the instant Motion on February 23, 2016.  On April 18, 2016, the Supreme Court ruled that Johnson announced a new substantive rule that has retroactive effect in cases on collateral review.  Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

### III.   LEGAL STANDARD

Section 2255 of title 28 of the United States Code provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

> without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law,
> or is otherwise subject to collateral attack, may move the court
> which imposed the sentence to vacate, set aside or correct
> the sentence.

28 U.S.C. § 2255(a).  As a general matter, "collateral attack on a final judgment in a criminal case is generally available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (citation and internal quotation marks omitted).

The movant carries the burden of proving, by a preponderance of the evidence, that he is entitled to relief under section 2255.  See, e.g., Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

## IV.   DISCUSSION

The crux of Villanueva's claim is that he was sentenced under ACCA pursuant to the Residual Clause.  See Motion at 2.  Because, as will be discussed below, the Residual Clause was illegal at the time he was sentenced, see Welch v. United States, 136 S. Ct. 1257, 1268 (2016) (holding that Johnson v. United States, 135 S. Ct. 2551, 2557 (2015), applies retroactively to cases on collateral review), Villanueva claims that his sentence was imposed in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution, Motion at 2,  and that he is thus entitled to relief expressly under section 2255.

In response, the United States in effect has raised a harmless error defense, Opposition at 7 (citing Brecht v. Abrahamson, 507 U.S. 619 (1993) and Underwood v.

United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht's harmless error standard to motions under section 2255)).  It argues that, under the law at the time he was sentenced, Villanueva's convictions were violent felonies under the Elements Clause.  Opposition at 10-13.  Consequently, the United States claims, any error committed by sentencing him under the Residual Clause—assuming such error can be found—is harmless.[2]

Consequently, the first task before the court is to determine whether Villanueva has proven by a preponderance of the evidence that he was sentenced under the Residual Clause.  Triana, 205 F.3d at 40.  If he was so sentenced, his "sentence was in excess of the maximum authorized by law," 28 U.S.C. § 2255(a); see also, e.g., Lee v. United States, No. 3:16-cv-6009-MAT, 2016 WL 1464118, at *3 (W.D.N.Y. Apr. 12, 2016).  The court's second task is to determine, should an error have occurred, whether that error was amenable to harmless error review, and, to the extent that it is, whether there is "grave doubt" as to whether the error "ha[d] a substantial effect or influence on determining" Villanueva's sentence.  O'Neal v. McAninch, 513 U.S. 432, 435 (1995); see also Brecht, 507 U.S. at 637, and Peck v. United States, 106 F.3d 450, 454 (2d Cir. 1995).  If the court harbors "grave doubt," "the petitioner must win."  O'Neal, 513 U.S. at 436.

---

[2] The court notes that the United States refers to the harmless error standard only once in its Opposition and does not expressly state harmless error as a defense anywhere in its papers.  However, because the United States, at the second oral argument held on the instant Motion, characterized its position as one falling within the doctrine of harmless error, the court will construe its papers as having raised it.

Thus, if the court determines that there was error, and that the error was not harmless, Villanueva is entitled to relief, his sentence must be vacated, and the case must be set down for resentencing.

As to the first question, the court concludes, in light of the record of Villanueva's sentencing, that it is more likely than not that he was sentenced under ACCA's Residual Clause. The court considers, among other facts, the absence of any discussion in court concerning under which of the ACCA subsections Villanueva's assault convictions qualified, as strong circumstantial evidence that the court used the most obvious path to the conclusion that the crimes were ACCA eligible—the broad-sweeping Residual Clause. Specifically, the Residual Clause's plain language would readily have encompassed a crime such as first degree assault with a minimum of statutory analysis, insofar as first degree assault, which has "physical injury" as an element, necessarily "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii). Consequently, Villanueva's Due Process rights were violated when he was sentenced as an Armed Career Criminal in 2000.

With respect to the second question, harmless error, the court first observes that the constitutional infirmity at issue in this case should not be amenable to harmless error review. The court then concludes, on the assumption that harmless error review does apply to a Johnson violation, that the error was not harmless because neither statute under which Villanueva was previously convicted for assault qualified as a violent felony under ACCA. The court reaches this conclusion because neither statute has "as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), or, to the extent that they do,

6

because the United States has not proven by competent evidence that he was convicted under a subsection of the statutes that do have such an element.

This Ruling proceeds in the following manner.  Subsection (A) explains ACCA's structure, the effect Johnson and Welch have had on ACCA, and the court's bases for concluding that Villanueva was sentenced under the Residual Clause.  The subsection that follows explains the court's conclusion that Villanueva was sentenced unconstitutionally.  Subsection (C) explains that the error was not harmless because Villanueva's convictions under Connecticut General Statutes 53a-59(a)(1) and 53a-167c did not qualify as violent felonies under any subsection of ACCA that was valid at the time of his sentencing.[3]

A.     ACCA and the Categorical Approach

Section 924(e) of title 18 of the United States Code requires a sentencing court to impose a mandatory minimum sentence of fifteen years' incarceration upon a defendant convicted of being a felon in possession of a firearm who had sustained "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  The statute further provides that:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

---

[3] Notably, the conclusion that there is grave doubt that Villanueva's prior convictions could have been Elements Clause offenses is further evidence that the Residual Clause was used as the basis for his ACCA sentence.

> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B)(i)-(ii).  Subsection (i) is commonly referred to as the "Elements Clause;" the first half of subsection (ii) as the "Enumerated Felonies Clause;" and the second half of subsection (ii), beginning with "or otherwise involves," as the "Residual Clause."  Id.  At the time Villanueva's conviction became final, as is true today, "the Government bears the burden of establishing (by a preponderance of the evidence), the existence of prior violent felony convictions when seeking a sentence enhancement pursuant to [ACCA]."  United States v. Rosa, 507 F.3d 142, 151 (2d Cir. 2007) (quoting United States v. Brown, 52 F.3d 415, 425 (2d Cir. 1995)).  Notably, the fact of a prior conviction is the only form of evidence that raises a statutory maximum penalty that need not be found by a jury, and may instead by found by a judge.  Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.").

A finding that a defendant qualifies for the ACCA enhancement also affects his sentencing calculation under the United States Sentencing Guidelines.  Under the Guidelines in effect when Villanueva was sentenced, and under the Guidelines in effect today, the ACCA guideline was found at section 4B1.4.  It raises the Base Offense Level for being a felon in possession of a firearm from as low as 20 to as high as 34.  Compare U.S.S.G. § 2K2.1 (providing Base Offense Levels for firearms offenses) with U.S.S.G. § 4B1.4 (providing Base Offense Levels for ACCA status offenders).

When Villaneuva was sentenced, as is also true today, courts were required to engage in "the categorical approach" announced in Taylor v. United States, 495 U.S. 575 (1990), to determine whether a defendant is eligible for an ACCA enhancement. This approach has, since Taylor, required the court to determine only whether the "statutory definitions—i.e., the elements—of a defendant's prior offenses, and not . . . the particular facts underlying those convictions," meet the definition of "violent felony" under ACCA.  Descamps v. United States, 133 S Ct. 2276, 2283 (2013) (internal quotation marks and citations omitted).  The purpose of this approach is well-established: by requiring sentencing courts to determine only whether a prior conviction categorically constitutes a qualifying prior conviction, rather than whether a defendant's prior conduct so qualifies, the categorical approach protects a defendant's Sixth Amendment right to a trial by jury.  Taylor, 495 U.S. at 601-02.

The categorical approach provides that:

> If the relevant statue has the same elements as the "generic" ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is "necessarily . . . guilty of the all the [generic crime's] elements." But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form.

Descamps, 133 S. Ct. at 2283 (quoting Taylor, 495 U.S. at 599).  In other words, a statute could, at the time Villanueva was sentenced as well as today, only act categorically as an ACCA predicate under the Elements Clause if it necessarily "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  An "element" is a fact that is necessary

for the prosecution to prove in order to obtain a conviction.  See, e.g., Apprendi v. New Jersey, 530 U.S. 466, 476-77 (2000) (quoting In re Winship, 397 U.S. 358, 364 (1970)). On the other hand, under the Residual Clause, it was necessary to show that the underlying crime "involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).

In a "'narrow range of cases,'" a statute may be divisible, meaning that it "[has] alternative elements."  Descamps, 133 S. Ct. at 2283-84 (quoting Taylor, 495 U.S. at 602).  For example, the "generic" definition of burglary contemplates the breaking and entering into a building.  Id.  A state's statute may, however, permit a burglary conviction for breaking and entering into either (a) a building or (b) an automobile.  Id.  In 1990, Taylor expressly contemplated such an instance and concluded that, "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement."  Taylor, 495 at 602.  Under Taylor, a court could—and today still can—only engage in this "modified categorical approach" in cases where the underlying crime states alternative elements.  Descamps, 133 S. Ct. at 2284 (citing Taylor, 495 U.S. at 602).

At the time Villanueva was sentenced, the law was in a state of flux over what material was appropriate to consult in engaging in the "modified categorical approach." The First Circuit had concluded, in United States v. Dueno, 171 F.3d 3, 7 (1st Cir. 1999) that state Presentence Reports ("PSRs") based on police reports not before the court were unacceptable, and the Ninth had concluded that PSRs generally were

inappropriate, United States v. Potter, 895 F.2d 1231, 1237-38 (9th Cir. 1999).  The Second Circuit, meanwhile, had concluded that state PSRs were acceptable, United States v. Brown, 52 F.3d 415, 425 (2d Cir. 1995), and that federal PSRs that incorporated state PSRs were also acceptable, provided the defense did not object to their use.  United States v. Pearson, 77 F.3d 675, 677 (2d Cir. 1996).  It was not until five years after Villanueva was sentenced that the Supreme Court conclusively resolved the issue by holding, in Shepard v. United States, 544 U.S. 13 (2005), that only court documents from the underlying conviction—such as those listed in Taylor ("indictment[,] information[, or] jury instructions")—could be consulted.

On June 26, 2015, the United States Supreme Court, after years of divided rulings over the proper scope of the Residual Clause, compare, e.g., James v. United States, 550 U.S. 192 (2007), with Begay v. United States, 553 U.S. 137 (2008), conclusively held that the Residual Clause was void for vagueness under the Due Process Clause of the Fifth Amendment to the United States Constitution, Johnson v. United States, 135 S. Ct. 2551, 2557 (2015) ("We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges.  Increasing a defendant's sentence under the clause denies due process of law.").

As a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  Teague v. Lane, 489 U.S. 288, 310 (1989).  However, two exceptions exist to this general bar on retroactivity.  The first is for "new substantive rules."  Schiro v. Summerlin, 542 U.S. 348, 351 (2004).  Such rules "include 'rules forbidding criminal

punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" Montgomery v. Louisiana, 136 S. Ct. 718, 728 (2016) (quoting Penry v. Lynaugh, 492 U.S. 302, 330 (1989)).  The second exception to the rule in Teague is for "'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'"  Id. (quoting Schiro, 542 U.S. at 352).

On April 18, 2016, the Supreme Court held that Johnson "announced a substantive rule that has retroactive effect in cases on collateral review."[4]  Welch v. United States, 136 S. Ct. 1257, 1268 (2016).  The Court came to this conclusion on the ground that Johnson, by "altering 'the range of conduct or the class of persons that [ACCA] punishes,'" id. at 1265 (quoting Schriro, 542 U.S. at 353), effectively "changed the substantive reach of the Armed Career Criminal Act."  Id.

Villanueva's conviction became final on December 31, 2000.  Johnson was decided nearly fifteen years later, on June 26, 2015.  By holding that Johnson announced a substantive rule, Welch requires this court to apply Johnson retroactively to Villanueva's section 2255 Motion.  Thus, for purposes of the disposition of the instant Motion, Villanueva's sentence must be evaluated with the understanding that the Residual Clause was unconstitutional on the day he was sentenced.  The court must determine whether, under the law that existed at the time Villanueva's conviction became final, Villanueva has shown that it is more likely than not that Villanueva was resentenced under the Residual Clause.

_____

[4] The Supreme Court's decision, of course, answers the first issue on remand in this Case.  See Mandate at 2.

B.   Legality of Villanueva's Sentence

Villanueva has shown by a preponderance of the evidence that the court

sentenced him under the Residual Clause, and not the Elements Clause.  At least three

considerations lead the court to this conclusion.  First, the record is entirely devoid of

any analysis on the court's part concerning the proper categorization of the assault

convictions—indeed, the record reflects that the assault convictions were mentioned

only once, and then, only outside the context of ACCA.  Transcript at 52:3-11

(discussing the assault convictions with respect to Villanueva's risk of danger to the

community in consideration of Villanueva's motion for bail pending appeal).  The

absence of any discussion supports a finding that the Residual Clause was the basis on

which the court concluded Villanueva qualified under ACCA, because a finding under

the Elements Clause would have required considerably more analysis on the record on

the part of the court. [5]

Second, the plain language of the Residual Clause easily encompassed the two

assault convictions at issue.  Specifically, the Residual Clause provides that a crime

qualifies as a violent felony under ACCA if it "involves conduct that presents a serious

potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(b)(ii).  The first degree

assault statute, at the time Villanueva was convicted and now, provides in relevant part

--------------------------------------------------------------------------------

[5] Further, an independent review of the court's work file in the case reveals none of the note-taking or other documentation of statutory analysis that would accompany a determination that the prior convictions in question were categorically Elements Clause offenses, as would have been required at the time by Taylor v. United States, 495 U.S. 575, 601-02 (1990).  Of particular note is the fact that the court had prepared a "script" for sentencing that addressed only the "serious drug offense" issue, and omitted any analysis or reference regarding the assaults.  Given that the Elements Clause would have required the court to consider the elements of the assault offenses, had the court sentenced Villanueva under that Clause, the script would likely have included language to that effect. Though these observations act as further support for the court's finding here that Villanueva was sentenced under the Residual Clause, the court does not rely on them as a basis for that finding.

that "[a] person is guilty of assault in the first degree when[, w]ith intent to <u>cause serious physical injury</u> to another person, he <u>causes such injury</u> to such person or to a third person by means of a deadly weapon or a dangerous instrument."  Conn. Gen. Stat. § 53a-59(a)(1).  The Assault on an Officer statute provides, <u>inter alia</u>, that a person is guilty of the crime when, "with intent to prevent [an officer] . . . from performing his or her duties, and such [officer] . . . is acting in the performance of his or her duties, such person <u>causes physical injury</u> to such peace officer."  Conn. Gen. Stat. § 53a-167c(a)(1).  Both statutes, on their face and without reference to any other section, make "physical injury" an element of their respective crimes, or at least conduct that had a serious potential risk of physical injury,[6] and it would have followed clearly and inexorably that they constituted violent felonies under the Residual, but not necessarily the Elements, Clause of ACCA.  <u>See</u> <u>infra</u> at Part IV.C.

Third, and relatedly, the United States neither argued at sentencing, nor brought forward evidence expressly to establish, that the prior assault convictions were categorically crimes of violence under the Elements Clause.  This fact cuts strongly against the United States' position, asserted in opposition to the instant Motion, that "[a]ny suggestion that the court relied on the residual clause is entirely without basis."  Opposition at 11.  Quite the contrary: the fact that neither argument was had, nor evidence produced, seeking to establish that the Elements Clause was the proper category for the assault convictions strongly suggests that the parties and the court

---

[6] Other subsections of the Assault on an Officer statute do not make "physical injury" an element of the crime, but nonetheless involve conduct that the court could reasonably have concluded "involves conduct that presents a serious <u>potential risk</u> of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii). For example, subsections (2) and (3) have as elements the "throw[ing]" of objects "capable of causing physical harm," and the use of mace, respectively.

assumed that the convictions fit within the capacious ambit of the Residual Clause. This observation, too serves as a basis upon which to rest the conclusion that Villanueva was sentenced under the Residual Clause.  As discussed above, it is quite reasonable to infer—under the law as it existed at the time—that convictions called "first degree assault" and "assault on an officer" "involve[d] conduct that presents a serious potential risk of physical injury to another," as the <u>Residual</u> Clause required.[7]  18 U.S.C. § 924(e)(2)(B)(ii).  In light of the foregoing, it is more likely than not that it is with this Clause in mind that the parties stipulated to Villanueva's ACCA eligibility at sentencing, and the court found Villanueva ACCA-qualified.

On the other hand, neither statute (as the court will discuss below) on its face "has as an element the use, attempted use, or threatened use of physical force against the person of another," as is required under the Elements Clause.  18 U.S.C. § 924(e)(2)(B)(i).  If the Government had been required to rely only upon the Elements Clause, it is unlikely that the record would be devoid of any reference at all to either of the assault convictions.

For the reasons set forth above, the court concludes that Villanueva has carried his burden, by a preponderance of the evidence, to show that he was sentenced under the Residual Clause, in violation of his rights under the Due Process Clause of the Fifth

---

[7] A review of the case law reveals that neither the Supreme Court nor the Second Circuit had, by December 31, 2000, when Villanueva's conviction became final, provided a great deal of guidance on what the Residual Clause meant or how to apply it.  The available cases merely interpret the relationship of the Residual Clause to the rest of ACCA, <u>see</u> <u>Taylor v. United States</u>, 495 U.S. 575, 587 (1990) (holding that the Residual Clause did not qualify the Enumerated Felonies Clause), or simply restate the language of the Clause, <u>see, e.g.</u>, <u>United States v. Andrello</u>, 9 F.3d 247, 249 (2d Cir. 1993) ("[T]he term 'violent felony' includes 'burglary' expressly and includes any other felony that 'otherwise involves conduct that presents a serious risk of physical injury to another.'") (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

Amendment to the United States Constitution.  <u>Johnson v. United States</u>, 135 S. Ct. 2552 (2015).

 C. <u>Harmless Error</u>

 The United States argues that, because, in its view, the assault convictions could conceivably have been considered Elements Clause offenses at the time Villanueva was sentenced, the court should conclude that any error was harmless.  Opposition at 11-12.  Specifically, the United States argues that the PSR adopted by the court discussed police reports that might have been used to prove that his convictions rested under subsections of the assault statutes that have "as an element the use . . . of physical force," 18 U.S.C. § 924(e)(2)(B)(i).  Further, under the law that existed at the time Villanueva was sentenced, "physical force" did not necessarily mean "violent" force, as the Supreme Court would later hold in <u>(Curtis) Johnson v. United States</u>, 559 U.S. 133, 139 (2010), and, the Government argues, surely a conviction for "first degree assault" would necessitate a finding of at least minimal physical force.  As the following discussion explains, the court questions whether harmless error may act as a defense to a <u>Johnson</u> violation and further concludes, assuming <u>arguendo</u> that the United States may raise it as a defense, that the error was not harmless.

 Harmless error is a defense, the proof of which lies on the government, and which may be waived by not expressly arguing it, <u>see, e.g.</u>, <u>United States v. Dominguez Betinez</u>, 542 U.S. 74, 82 n.7 (2004).  The defense may only be raised against "trial errors," and may not be used to defend against "structural errors" such as those that "affect the entire framework within which the trial proceeds, rather than simply an error in the trial process itself."  <u>Peck v. United States</u>, 106 F.3d 450, 454 (2d Cir. 1995).

Finally, when the court has "grave doubt" concerning whether the error had "a substantial effect or influence on determining" the sentence, the error cannot be deemed harmless.  O'Neal v. McAninch, 513 U.S. 432, 435 (1995).

As an initial matter, to say that a Johnson error is "mere trial error," rather than a structural error that "affect[s] the entire framework in which" an ACCA finding proceeds, Peck, 106 F.3d at 454, mischaracterizes the error.  This case is an excellent example. Without the Residual Clause, the entire structure of the ACCA proceeding at sentencing would have been different: counsel would have raised different arguments concerning ACCA eligibility and the court would have been forced to engage in analysis that the Residual Clause otherwise enabled it to avoid.  Taking the Residual Clause out of the equation so substantially alters the framework of ACCA that a Johnson violation can hardly be said to be anything other than "structural error," which is unamenable to harmless error review.  Id.

However, the court need not rest its decision on the conclusion that Johnson violations are "structural errors" not subject to harmless error review: even assuming that harmless error review applies, the error was not harmless.  Villanueva's prior convictions did not qualify as violent felonies under the Elements Clause, and consequentially the evidence was simply insufficient to subject him to the ACCA enhancement.[8]

--------------------------------------------------------------------

[8] Though the parties are not entirely clear on this point, much of the briefing raises the question whether the court should apply the law of 2000 or the law of today when conducting harmless error analysis.  See, e.g., Opposition at 12-15; Reply to Opposition at 4-8.  The court need not resolve this issue today, because even assuming the Government is correct that the law of 2000 applies to harmless error review (a proposition at odds with, for example, the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984), which is conducted with today's law, see, e.g., Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994)), that 2000 law would have mandated that the assault crimes at issue here did not have "as an element" the use of force.

1.     First Degree Assault

Section 53a-59 of the Connecticut General Statutes provides, in relevant part:

> A person is guilty of assault in the first degree when, (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third party by means of a deadly weapon or a dangerous instrument.

Conn. Gen. Stat. § 53a-59(a).  The Connecticut General Statutes further provide, in relevant part:

> (6) "Deadly weapon" means any weapon, whether loaded or unloaded, from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles. . . . ;
>
> (7) "Dangerous instrument" means any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury.

Conn. Gen. Stat. § 53a-3(6)-(7).

a.     Divisibility of the statute and force as an element

To the extent that the entirety of section 53a-59 is itself divisible (the statute enumerates five different subsections means of committing first degree assault), the Judgment in Villanueva's first degree assault case expressly indicates that he was convicted under subsection (1), recited above.  See Opposition Exhibit A (Doc. No. 5-1).[9]  However, subsection (1) itself may be committed by means either of a "deadly

---

[9] Villanueva argues that the copy of the Judgment proffered by the United States should not be considered a reliable Shepard document because it is not certified.  Reply (Doc. No. 9) at 9.  The court is not aware of case law, and Villanueva does not cite to any case law, requiring that a court document such as the Judgment here be certified.  Accordingly, and because the Department of Corrections would presumably retain a reliable copy of the Judgment, the court accepts it as a reliable basis on which to conclude that Villanueva was sentenced under subsection (a)(1).  However, it does not state the factual basis for the conviction, and therefore cannot be considered a reliable basis to conclude under which "means" of subsection (a)(1) Villanueva was convicted —that is, whether his assault was by means of a "deadly weapon" or "dangerous instrument."

weapon" or a "dangerous instrument."  Conn. Gen. Stat. § 53a-59 (a)(1).  The question becomes, then, whether these alternative means of committing first degree assault categorically "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).

Turning to the definitional sections, the first means—that is, causing "physical injury . . . by means of a deadly weapon," Conn. Gen. Stat. § 53a-3(6)—"is necessarily to . . . use 'physical force,' on any reasonable interpretation of that term."  United States v. Walker, 442 F.3d 787, 788 (2d Cir. 2006) (concluding that N.Y. Penal Law § 120.05(2), defining second degree assault as "caus[ing physical] injury to [a] person by means of a deadly weapon or dangerous instrument," qualified as an ACCA predicate under the Elements Clause and the Residual Clause).  This is particularly true when considered with reference to Connecticut's definition of "deadly weapon," which lists weapons that may only cause physical injury by use of force.  Conn. Gen. Stat. § 53a-3(6).

However, the second means—that is, causing "physical injury . . . by means of . . . a dangerous instrument," Conn. Gen. Stat. § 53a-3(7)—does not necessitate the use of force in light of the definition of the term "dangerous instrument" in the Connecticut General Statutes.  Specifically, "dangerous instrument" includes substances.  Id. ("'Dangerous instrument' means any instrument, article, or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury[.]").  Any natural reading of the term "substance" must include drugs, such as heavy doses of narcotics, or poisons, such as sarin, both of which cause "physical injury" without the use of "physical force

against the person of another," 18 U.S.C. § 924(e)(2)(B)(i).[10]  Indeed, no physical force

of any kind is required to violate the statute, by its very terms: one could, "with intent to

cause serious physical injury to another person, [ ] cause[ ] such injury to such person

or to a third party by means of . . . a dangerous instrument," Conn. Gen. Stat. § 53a-

59(a)(1), e.g., by using emotional force to compel another person to take a cyanide pill,

or by distributing anthrax through a building's air conditioning system.

 The court acknowledges that the Second Circuit's decision in Walker, 442 F.3d at

788, suggests the contrary position.  The court there concluded that a conviction for

second degree assault under the New York Penal Law was a violent felony under both

the Elements Clause and the Residual Clause.  Id.  In New York, as in Connecticut,

second degree assault is committed where a defendant causes physical injury to a

person "by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law

§ 120.05(2).  The court concluded, without further discussion, that "[t]o (attempt to)

cause physical injury by means of a deadly weapon or dangerous instrument is

necessarily to (attempt to) use 'physical force,' on any reasonable interpretation of that

term, and necessarily creates 'a serious risk of physical injury to another.'"  Walker, 442

F.3d at 788.

 However, the Walker court did not discuss the statutory definition of "dangerous

instrument," which in New York, as in Connecticut, includes "substance[s] . . . which,

---

  [10] The court notes that, under today's law the statute is even less likely to qualify under the
Elements Clause, in light of the "violent force" necessary under (Curtis) Johnson v. United States, 559
U.S. 133, 139 (2010); cf. United States v. Moreno, Nos. 14-4700-cr & 14-4709-cr, 2016 WL 691128, at *3
(2d Cir. Feb. 22, 2016) (holding that section 53a-60(a)(3) of the Connecticut General Statutes, defining
second degree assault as "recklessly caus[ing] serious physical injury by means of a deadly weapon or a
dangerous instrument" does not constitute a violent felony within the meaning of section 16(a) of title 18
of the United States Code (the language of which is identical to the Elements Clause), despite the "deadly
weapon or dangerous instrument" element, because it prohibits "reckless conduct.").

under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury."  N.Y. Penal Law § 10.00(13).  Given that the court found that the underlying conviction very clearly qualified under the Residual Clause, its decision concerning the New York statute's qualification under the Elements Clause was neither necessary to the outcome of Walker nor controlling on this case, in which the Residual Clause is no longer a legal basis upon which the court may sentence Villanueva.  See generally Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

Rather than argue that the statute, on its face, "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), the Government first insists that "Villanueva plainly was convicted of a crime that involved 'the use, attempted use, or threatened use of physical force against the person of another.'"  Opposition at 11 (emphasis added) (citing 18 U.S.C. § 924(e)(2)(B)(i).  The United States bases this contention on two considerations.  The first is the Presentence Report ("PSR") submitted by the United States Probation Office at his first sentencing, which described the facts purportedly underlying the conviction.

Though the United States contends that federal PSRs were acceptable bases on which to rely when determining ACCA eligibility in 2000, the court is unpersuaded that, in the Second Circuit, federal PSRs incorporating police reports were, as a matter of law, acceptable.  The authority on which the Government relies, United States v. Pearson, 77 F.3d 675, 677 (2d Cir. 1996), held only that a federal PSR incorporating a state PSRs (not necessarily a police report) was acceptable, provided the defense did

not object to its use or accuracy.  Further, as discussed above, other circuits had ruled

out unavailable police reports and PSRs.  United States v. Dueno, 171 F.3d 3, 7 (1st

Cir. 1999) (state PSRs incorporating police reports not before the court); United States

v. Potter, 895 F.2d 1231, 1237-38 (9th Cir. 1999) (PSRs).  The court would not

necessarily have relied on the PSR to make a finding that, by Taylor's own terms, could

only be made by "indictment[,] information[, or] jury instruction," Taylor, 495 U.S. at 602,

and was not, at the time, expressly permitted to be relied on by the Second Circuit.[11]

The United States has also claimed that, because the Judgment in Villanueva's

first degree assault case also indicates that he was convicted of unlicensed gun

possession, it should follow that his assault offense was carried out by means of a

"deadly weapon," thereby necessitating, as an element, the use of force.  Supplemental

Memorandum in Opposition ("Supplemental Memorandum") (Doc. No. 17) at 4-5.

However, the fact of another conviction for a different crime (here, unlicensed gun

possession), says nothing about the facts underlying the relevant crime (that is, the first

degree assault), as a normal, Shepard-approved document such as a charging

instrument or a plea allocution would.  See, e.g., Taylor v. United States, 495 U.S. 575,

602 (1990) (documents consulted to determine under which section of a divisible statute

a defendant was convicted must show that the requisite fact was "necessarily" found or

admitted).  While Villanueva was convicted of firearm possession on the same day he

---

[11] Today, of course, the United States' effort to cause the court to examine the facts underlying Villanueva's conviction would certainly fail as well: "reliance on a federal PSR's factual description of a defendant's pre-arrest conduct to determine whether a prior offense constitutes a 'crime of violence' . . . is prohibited[,] even where the defendant does not object to the PSR's description."  United States v. Reyes, 629 F.3d 453, 459 (2d Cir. 2012) (discussing "crime of violence determinations" for purposes of U.S.S.G. § 4B1.2(a)(1)); see also United States v. Dantzler, 771 F.3d 137, 149 (2d Cir. 2014) (applying the rule in Reyes to ACCA determinations); United States v. Rosa, 507 F.3d 142, 156 (2d Cir. 2007) (same).

was convicted of first degree assault, it does not follow that he committed first degree

assault with the firearm.  Because the PSR would not necessarily have been considered

a reliable document at the time, and the only available such document (the Judgment)

does not "necessarily" establish by which "means" of the statute Villanueva was

convicted, the court concludes that there are grave doubts that Villanueva could have

been convicted of a violent felony under the Elements Clause by way of the modified

categorical approach.[12]

      The second basis on which the United States insists that the court must conclude

that a violation of section 53a-59(a)(1) is categorically a violent felony under the

Elements Clause is an unpublished Second Circuit Summary Order in Harris v. United

States, No. 15-2679 (2d Cir. Nov. 17, 2015).  In that Summary Order, without specifying

that the conviction was sustained under Connecticut's penal law, which subsection of

the section 53a-59 statute by which the petitioner was convicted (assuming he had

been convicted in Connecticut), or stating reasoning to support its conclusion, the court

wrote, "Petitioner's 2001 first-degree assault . . . [is] not implicated by Johnson, because

[it is a] violent felon[y] within the meaning of 18 U.S.C. § 924(e)(2)(B)(i) and not the

residual clause of § 924(e)(2)(B)(ii)."  Id. at 2.  The court declines to conclude that,

despite clear statutory language in the Connecticut General Statutes contemplating the

possibility of an assault by means of a "substance," which would not require the use of

---

[12] The foregoing analysis assumes that it would be proper to consult Taylor-approved documents at all, i.e., it assumes that the statute is, in fact, divisible.  However, later this term the Supreme Court may conclude that statutes, such as section 53a-59(a), which merely provide alternative means, rather than alternative elements, are not divisible at all, see Mathis v. United States, 136 S. Ct. 894, 894 (2016). However, because the issue is not dispositive of this case (because there are no Shepard-approved documents to consult, even if the statute were considered divisible), the court does not consider it necessary either to stay decision of this case pending the resolution of the issue in Mathis or to decide this issue.

"physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), section 53a-59 is a violent felony under the Elements Clause solely on the basis of the Summary Order in <u>Harris</u>.  The court is even less inclined to do so where, as here, the Second Circuit has issued a mandate to this court directing the court to determine "whether the assault conviction[ ] remain[s] a proper ACCA predicate after <u>Johnson</u>."  Mandate at 2.

Finally, the United States, in its Supplemental Memorandum in Opposition ("Supplemental Memorandum") (Doc. No. 17), cites several other authorities in an effort to show that, despite section 53a-59(a) including offense conduct that does not necessitate the use of physical force against the person of another, 18 U.S.C. § 924(e)(2)(B)(i), it nonetheless has "as an element" the use of force.[13]  The authorities cited by the United States are either inapposite or unpersuasive.  The first two cases interpret statutes that bear little resemblance to the Elements Clause.  <u>See</u> <u>Morris v. Holder</u>, 676 F.3d 309 (2d Cir. 2012) (finding that second degree assault was a "crime of violence" under section 16(b) of title 18 of the United State Code, which, the Government concedes, "has almost identical wording to ACCA's residual clause," not the Elements Clause, Supplemental Memorandum at 6); <u>United States v. Castleman</u>, 134 S. Ct. 1405, 1410 (2014) (resolving an issue reserved in <u>(Curtis) Johnson</u>, 559 U.S. at 143-44, by determining that, <u>unlike the Elements Clause</u>, use of <u>violent</u> force is unnecessary for a statute to serve as a "misdemeanor crime of domestic violence," 18 U.S.C. § 922(g)(9)).  The remaining cases inappropriately apply those cases or the logic

---

[13] In making these arguments, as well as arguments in its principal Opposition, the United States has sought to avail itself of post-2000 law, even while arguing that Villanueva may only rely on pre-2000 when countering the United States' harmless error arguments.  The court need not resolve this discrepancy (and presumes that the United States makes these arguments in the alternative, should the court decide to use the law of today in its harmless error analysis, or at a new sentencing), because the arguments advanced by the Government on the basis of today's law are, in any event, unpersuasive.

therein, and in particular that of <u>Castleman</u>, to the Elements Clause.  <u>See</u> <u>United States</u> <u>v. Rice</u>, 813 F.3d 704, 706 (8th Cir. 2016) (over dissent, inappropriately applying <u>Castleman</u>, instead of the more apposite <u>(Curtis) Johnson</u>, to the Elements Clause in the Guideline provision that runs parallel to ACCA, U.S.S.G. § 2K2.1(a)(3)); <u>United</u> <u>States v. Anderson</u>, 695 F.3d 390, 400-01 (6th Cir. 2012) (over a disagreeing concurring opinion resting on the Residual Clause, finding, in derogation of <u>(Curtis)</u> <u>Johnson</u> and the plain language of the Elements Clause ("physical force [is distinguished from], for example, intellectual force or emotional force," <u>(Curtis) Johnson</u>, 559 U.S. at 138), that, for example, "a defendant's deceit or fraud is 'equivalent' to the use of force); <u>De Leon Castellanos v. Holder</u>, 652 F.3d 762, 766-67 (7th Cir. 2011) (same).[14]

Each of the foregoing cases emphasizes the imposition of bodily injury upon a victim, and does not focus its inquiry on the presence, in the subject statute, of an <u>element</u> the use of force against the person of another, as is required by the Elements Clause.  To the extent that the federal statutes permit such an inquiry—as in <u>Morris</u> and <u>Castleman</u>, given the more expansive federal statutes at issue there, <u>see, e.g.</u>, <u>Castleman</u>, 134 S. Ct. at 1414-15—it is unobjectionable.  However, such an inquiry has

---

[14] If anything, <u>Castleman</u> bolsters the proposition that section 53a-59(a) does not categorically have, as an element, the use of <u>violent</u> physical force against the person of another, as has been required since <u>(Curtis) Johnson</u> was decided in 2010.  In that case, the court concluded that an element of <u>common law</u> force—that is, any degree of force, <u>whether violent or not</u>—would be sufficient to constitute a "misdemeanor crime of domestic violence" under 922(g)(9) of title 18 of the United States Code. <u>Castleman</u>, 134 S. Ct. at 1413.  Such force, the court concluded, could conceivably include, for example, the poisoning of a beverage, because the "common-law concept of 'force' encompasses even its indirect application. . . . A battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance, such as a laser beam.  It is impossible to cause bodily injury without applying force in the common-law sense."  <u>Id.</u> at 1414-15 (internal quotation marks and citations omitted).  It is precisely this broad, common law definition of "force" that was explicitly and conclusively rejected in <u>(Curtis) Johnson</u>.  <u>(Curtis) Johnson</u>, 559 U.S. at 139-40.

no place in the ACCA context, where the focus must be on whether the subject statute has "as an element the use . . . of [violent] physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).  If the bodily injury at issue may occur without the use of such force, then force is not an element of the crime.

Further to this point, at oral argument the United States observed that the consequences of determining that the Elements Clause cannot encompass first degree assault and assault on an officer appears illogical: who would reasonably have supposed that such crimes would not qualify as "violent felonies?"  But see, e.g., United States v. Parnell, 818 F3d 974, 982 (9th Cir. 2016) (Watford, J., concurring) ("The notion that robbery is not a 'violent felony,' as that term is defined in [ACCA], strikes me as counterintuitive to say the least.  Holding that armed robbery doesn't qualify as a violent felony seems even more absurd.  But [ ] that conclusion is compelled [because the statutes at issue do not have as an element the use of force.]").  To evade this result, the United States has asked the court to read into the two statutes at issue here an element of "the use of physical force against the person of another," that do not have such an element but do criminalize the imposition of "bodily injury."  The Government claims that the focus of the elements inquiry must be the imposition of bodily injury, because a focus on force may exclude many statutes that are, on their face, quite violent but do not have, as an element, the use of force.

If the Government were to succeed in this effort, ACCA never needed a Residual Clause at all: the Elements Clause would have been enough to capture such statutes. Indeed, were its argument to prevail, the meaning of the Elements Clause would take on a different meaning than its plain language.  Should Johnson's retroactivity remove

many statutes from the ambit of the Armed Career Criminal Act, as the United States fears, Congress may revise the Act to capture those statutes in a manner that complies with the Due Process Clause, or states may revise their statutes to require the use of force as an element of their violent crimes.  Until then, a statute may only act as an ACCA predicate if it is a "serious drug offense," "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "is burglary, arson, [extortion, or] involves use of explosives."  18 U.S.C. § 924(e).  Because Villanueva's prior convictions for first degree assault and, as will discussed further below, assault on an officer, did not, and do not, meet the requirements of any of these three categories, he neither was, nor is he today, eligible for a sentencing enhancement under the Act, given that he has only two qualifying drug convictions.

In short, section 53a-59(a) of the Connecticut General Statutes, by its very terms, permits conviction by means of less than "physical force against the person of another," i.e., by means of the use of a substance.  Conn. Gen. Stat. § 53a-3(6)-(7); 53a-59(a)(1).  Thus, the court harbors "grave doubt," O'Neal, 573 U.S. at 435, that the United States, under Taylor, could have established that Villanueva was convicted under any version of that statute that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).

2.     Assault on an Officer

Villanueva was also convicted of assault on an officer.  The relevant statute, section 53a-167c of the Connecticut General Statutes, at the time Villanueva was convicted, provided in relevant part:

> A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonably identifiable peace officer . . .

27

> from performing his or her duties, and while such peace officer
> . . . is acting in the performance of his or her duties,
>
> > (1) such person causes physical injury to such peace officer . . . , or
> >
> > (2) such person throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such peace officer . . . , or
> >
> > (3) such person uses or causes to be used any mace, tear gas or any like or similar deleterious agent against such peace officer . . . .

Conn. Gen. Stat. § 53a-167c (1991).

As a judge in this District has recently observed, "[n]o court . . . has declared the entirety of § 53a-167c to be categorically a crime of violence." Petrillo v. United States, No. 3:08-cv-1204 (JBA), 2015 WL 7574744, at *5 (D. Conn. Nov. 25, 2015). No single subsection of the statute actually enumerates "the use of force" as an element of the crime, Conn. Gen. Stat. § 53a-167c, and the courts of Connecticut have not included "the use of force" as an element of the crime when articulating the statute's elements, see, e.g., State v. Turner, 91 Conn. App. 17 (2005). Furthermore, subsection (a)(3), for example, plainly does not necessitate the use of violent physical force in its commission. Conn. Gen. Stat. § 53a-167c(a)(3) (criminalizing the "use of . . . tear gas or any like or similar deleterious agent" in hindering a police officer in the performance of his duties).

In support of its claims that section 53a-167c was categorically a violent felony under the Elements Clause and that, consequently, any error was harmless, the United States first asserts that section 53a-167c(a)(1) "involved 'the use, attempted use, or threatened use of physical force against the person of another," Opposition at 13

(emphasis added); and that the PSR reflected facts that would support a conviction under 53a-167c(a)(1).  Id.

The court disagrees.  First, the court observes that the Government again misstates the inquiry: the question is not whether the offense "involves" the use of force, but rather whether the statute "has <u>as an element</u> the use . . . of physical force."  18 U.S.C. § 924(e)(2)(B)(i) (emphasis added).  Even assuming that Villanueva was convicted under subsection (a)(1), that subsection simply does not have, nor did it have at the time Villanueva was sentenced, the use of force as an element.  The Second Circuit later addressed a similar statute in <u>Chrzanoski v. Ashcroft</u>, 327 F.3d 188 (2d Cir. 2003).  In that case, the court determined that a statute with nearly identical language— section 53a-61 of the Connecticut General Statutes—did not "ha[ve] as an element the use . . . of physical force," 18 U.S.C. § 16(a). The Connecticut statute at issue in <u>Chrzanoski</u> provides that "[a] person is guilty of assault in the third degree when[ w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person."  Conn. Gen. Stat. § 53a-61(a)(1).  The court concluded that, because "there is a difference between the causation of an injury and an injury's causation by the 'use of physical force," the statute plainly did not have "as an element the use . . . of physical force."  <u>Chrzanoski</u>, 327 F.3d at 194.

The portion of section 53a-167c that conceivably implicates the use of force at all—"such person causes physical injury to such peace officer"—very closely resembles the statute at issue in <u>Chrzanoski</u>.  The court can see no reason why it would have

come to a different conclusion with respect to section 53a-167c(a)(1) than the Second Circuit did with respect to section 53a-167c several years later.[15]

Further, the foregoing assumed that Villanueva was convicted under subsection (a)(1), as the United States asserts. Opposition at 12. However, the Government can only direct the court to the PSR, which, as discussed above, see supra at 16-17, could not reasonably have served as a basis for concluding under which section of a divisible statute a defendant was convicted. See, e.g., United States v. Rosa, 507 F.3d 142, 156 (2d Cir. 2007).

In short, the court has "grave doubts" that the evidence would have been sufficient to render Villanueva eligible for an ACCA enhancement under any provision of ACCA that was legal at the time. Consequently, and to the extent that harmless error review is applicable to a Johnson error analysis, the court cannot conclude that the error was harmless.

## V.    CONCLUSION

Villanueva's Successive Motion to Vacate, Set Aside or Correct Sentence (Doc. No. 1) is **GRANTED** and his sentence is hereby **VACATED**. Villanueva is to be resentenced. Villanueva cannot qualify for the sentencing enhancement under the

---

[15] The court notes that the Second Circuit has concluded that section 53a-167c(a)(1) could serve as a "crime of violence" under section 16(b) of title 18 of the United States Code. Canada v. Gonzales, 448 F.3d 560, 568 (2d Cir. 2006). Section 16(b), unlike sections 16(a) and 924(e)(2)(B)(i) (which require the use of force as an element of the crime), provides that a statute may serve as a crime of violence if it is a felony and "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). This substantially broader language is not included in any provision of ACCA that remains constitutional after Johnson.

It is worth observing, however, that the Second Circuit stated that "a person could theoretically violate CGS § 53a-167c(a)(1) without using force." Canada, 448 F.3d at 568. The reason a person can violate section 53a-167c(a)(1) without the use of force is because force is not an element of the crime, as is required by the Elements Clause in this case.

Armed Career Criminal Act, 18 U.S.C. § 924(e), absent further <u>Shepard</u>-approved documentary evidence establishing by a preponderance of the evidence (1) that Villaneuva was convicted under the version of section 53a-59(a)(1) of the Connecticut General Statutes necessitating, as an element, the use of force; or (2) that section 53a-167c of the Connecticut General Statutes, or a subsection therein, has as an element the use of force and that Villanueva was convicted under a subsection of that statute that qualifies under ACCA.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 10th day of June, 2016.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge